PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. ENCARNACIÓN TORRES, Defendant and Appellant.

No. 2400. Argued June 19, 1925.—Decided August 1, 1925.

1. MURDER—EVIDENCE—CIRCUMSTANTIAL EVIDENCE.—Where a man sleeping with his wife is found lying in bed wounded with his wife dead beside him and his was the only reasonable opportunity to have killed her, in the absence of anything to show that the wounds were inflicted by a third person these are circumstances tending to show his guilt.

2. ID.—ID.—MALICE.—Where the circumstances point to the killing of one human being by another, malice is presumed.

3. ID.—ID.—DELIBERATION.—In a trial for murder in the second degree it is unnecessary to prove deliberation.

4. ID.—ID.—SUMMARY ACQUITTAL.—If at the close of the case for the prosecution the evidence tends to prove any crime less than that charged, the defendant is not entitled to a summary acquittal.

5. ID.—ID.—INSANITY.—In answer to the question whether the defendant had ever been insane a witness said that he was obsessed (obsesado) for six months. On motion of the prosecuting attorney the court ordered the answer stricken. Held: That in the absence of any offer on the part of the defendant to show his actions or conduct during the said six months, the error, if any, was harmless.

6. ID.—ID.—OPINION OF WITNESS.—The exclusion of the opinion of an ordinary witness as to the sanity of a defendant was not erroneous, as no sufficient basis was laid to ask his opinion on the sanity of the defendant.

7. ID.—ID.—HYPOTHETICAL QUESTION.—A defendant wanted to ask hypothetical questions to an expert witness and began thus: "In the trial of this case, Doctor, the court has admitted evidence . . . in this case the following facts were proved, which have been admitted. . . . . ." Held: That since those

questions were not in hypothetical form, the court was justified in sustaining the objections made to them by the district attorney.

8. ID.—ID.—ADMISSION.—In a prosecution for murder the averment of insanity made by the accused is not an admission of the killing.

District Court of Ponce, R. Díaz Cintrón, J. Judgment of conviction for murder in the second degree. *Affirmed.*

R. *Arjona Siaca* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a prosecution for murder in the second degree. The defendant, his wife and two of his children lived in two small rooms in the suburbs of Ponce. The two children slept in one room while the defendant and his wife slept in the other. The house where the defendant lived contained a number of tenants and the rooms in the main were separated one from the other by hangings made of sacks. Two of the witnesses of the prosecution were neighbors whose rooms were so separated. On a morning of May, 1923, the son of the defendant, alarmed by the condition in which he found his parents, called in his uncle, and other neighbors came in. They found the wife of the defendant, Gloria Rivera, dead with two wounds, either of which would have been mortal. The defendant was lying in the same bed with her with a knife stuck in his breast and groaning. The witnesses said that they heard not a sound on the night of the event. There was a view of the premises by the judge and jury. This was the main testimony of the prosecution, and at the conclusion the defendant moved for a summary acquittal.

The theory of the defendant under his first assignment of error is that neither malice nor premeditation was shown. Also that there was no evidence directly connecting the defendant with the killing of Gloria Rivera. We shall dispose of the matter of evidence first.

[1] Where a man who sleeps alone with his wife in a room surrounded by neighbors who can hear the slightest

sound, is found lying in bed with a knife sticking in his breast and his wife dead beside him with wounds produced from a knife, and the situation of the rooms is such that the neighbors could have heard the slightest sound of an entry or a struggle or an altercation, this was circumstantial evidence from which a jury had a right to infer murder in the second degree. The circumstances pointed to no reasonable conclusion except that the defendant had killed his wife. His was the only reasonable opportunity to have killed Gloria Rivera.

When a man is found lying in bed with his wife dead beside him, even though he himself is wounded, this is a circumstance coupled with the other evidence of the prosecution tending to show guilt in the man especially in the absence of anything to show that the wound was inflicted by a third person.

[2] Where the circumstances point to the killing of one human being by another malice is presumed.

[3] In murder in the second degree it is unnecessary to prove deliberation. The English copy of section 201 of the Criminal Code is clearer than the Spanish and it provides:

"Sec. 201. All murder which is perpetrated by means of poison, lying in wait, torture, or by any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration or attempt to perpetrate arson, rape, robbery, burglary or mayhem, is murder of the first degree, and all other kinds of murders are of the second degree."

From this section it is evident that only murder in the first degree requires the proof of deliberation, unless committed in the perpetration of a crime.

[4] At the close of the case for the prosecution if the evidence tends to prove any crime less than that charged in the information the defendant is not entitled to a summary acquittal. If he elects to rest his case he might ask for an instruction that there was no evidence of the prin-

cipal crime charged, in this case of murder in the second degree.

[5] Josefa Torres, sister of the defendant, testified that he slept abnormally; that he got up asleep, went around the house taking hold of things and giving them to his wife, saying: "I hand this to you"; that he said this while asleep. The theory of the defense was in part insanity. The witness, after giving more evidence somewhat tending to show occasional states of somnambulism in the defendant, in answer to the question if the defendant had ever been insane, said he was obsessed (*obsesado*) for six months. The Government moved to strike this answer, and the court ordered it stricken. The defendant made no other attempt to show the acts or characteristics of the defendant during these six months.

The theory of the court probably was that an ordinary witness should not be allowed to testify as to insanity, but the court did not put its refusal on this ground, and there is nothing in the record to show the exact ground of refusal. The defendant did not further question the witness in regard to the manifestations or action of the defendant during the supposed six months, nor in any way vary the questions so as to bring out the real knowledge of the witness. The *fiscal* attempts to argue that the jury heard the answer and while this to a certain extent may be true, there may always be conscientious jurymen who will obliterate from their minds evidence which the court says they should not consider. The principal support for the action of the court is that the question and answer in themselves did not tend to prove such an insanity which would make the person not responsible for a crime. A person may have an insistent idea or be obsessed and still be perfectly responsible for a crime. In the absence of any offer on the part of the defendant to show his actions or conduct during the said six months the error, if any, was harmless.

[6] The captain of police of Ponce was with and around

the defendant for a number of hours after the crime and had chances to observe him. The testimony of the witness, however, was that the defendant absolutely refused to speak for a number of hours, and then finally when he was asked where was his wife said she was in her house. The witness was then asked from his observation what his opinion was of the sanity of the defendant. The answer was excluded. We find no error, as no sufficient basis was laid to ask an ordinary or an expert witness his opinion of the sanity of the defendant.

[7] An expert witness of the defendant was testifying. The defendant wanted to ask hypothetical questions and began in this wise: "In the trial of this case, Doctor, the court has admitted evidence . . . . . . . . In this case the following facts were proved, which have been admitted." To each of these questions the *fiscal* made the formal objection that they were not in hypothetical form. The court sustained the objection of the *fiscal* and was justified in doing so. Again the defendant did not attempt to vary the form of his question to bring it in line with the manner of hypothetical interrogatories. This form generally is: "If the following facts were shown, what would be your opinion?" And then the questioner himself resumes the facts, but the foregoing questions were not technically well made, and the second assumed that certain facts were admitted. This witness, moreover, was allowed to state his general impressions of the mental state of the defendant, from the acts described to him.

[8] The fifth assignment of error relates to the refusal of the court to permit another hypothetical question, but the court was justified in saying that a proper basis had not been laid, besides permitting the witness to testify to a certain extent in regard to the effect of somnambulism.

The sixth assignment of error relates to the sufficiency of the evidence. After the evidence was all in the case for the government was much stronger than ever. The defend-

ant took the stand.  He showed himself to be a normal in-
dividual at the time and if the jury did not believe the evi-
dence of insanity, it had a right to believe that the defend-
ant was a very malignant person, and was responsible for
the death of his wife.  The jury brought in a verdict of
voluntary manslaughter, and the court sentenced the de-
fendant to seven years in the penitentiary.  Dr. Yordán
Passarell, expert for the Government, who had innumerable
opportunities to observe the defendant, testified that he
saw not the slightest sign of insanity.  Indeed, he said, that
until the moment of the trial he did not know that the de-
fendant maintained that he was insane at the time of the
commission of the act.

In several parts of his brief the *fiscal* assumed that the
averment of insanity is an admission of the killing.  Such
admission by no means follows.  A man accused of murder
may defend on the double ground that he did not kill the
deceased and that he was insane at the time.  In favor of
an insane man, it might be readily shown that not only he
was insane, but that somebody else did the killing, or that
the defendant could not possibly have executed the crime.

The appellant argued incidentally, too, that the instruc-
tions in this case should have related to murder or to an
acquittal, and that there really was not any very good rea-
son for giving instructions in regard to manslaughter.  We
are inclined to agree with the appellant, although he does
not assign as error any part of the instructions of the
court, and of course he was perfectly satisfied to have the
court give instructions about voluntary manslaughter.  There
was testimony in the whole case tending to show that the
defendant was jealous of his wife, and the jury probably
believed that the defendant did the killing in a moment of
sudden passion.  This they had the right to do under the
instructions of the court not objected to by the defendant.

We find no prejudicial error and the judgment should
be affirmed.